# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**MARY ANN O'NEAL, BEVERLY WILKINS,**
**and BEVERLY STEWART**

               **Plaintiffs,**

**v.**                                             Civ. No. 97-261 JP/DJS

**DONNA SHALALA, SECRETARY OF THE**
**DEPARTMENT OF HEALTH AND**
**HUMAN SERVICES**

               **Defendant.**

## MEMORANDUM OPINION AND ORDER

On February 2, 1999 Plaintiffs filed a Motion to Reconsider Judge Parker's Order Dated January 19, 1999 [Doc. No. 121]. In a Memorandum Opinion and Order filed August 12, 1999, I granted and denied portions of Plaintiffs' Motion to Reconsider. The remainder of Plaintiffs' Motion to Reconsider will be granted.

On May 14, 1999 Defendant filed a Motion for Summary Judgment [Doc. No. 141]. That motion will be granted.

**I.    Motion to Reconsider**

The August 12, 1999 Memorandum Opinion and Order disposed of all but two aspects of Plaintiffs' Motion to Reconsider: 1) the timeliness of Plaintiff O'Neal's claims under the November 20, 1996 final agency decision which formed the basis of her allegations in the original complaint, filed February 27, 1997, and 2) the existence of a retaliation claim based on the hiring of Dr. Scott Bingham and an alleged resulting loss of Plaintiff O'Neal's status and authority, as

alleged in the supplemental complaint, filed June 23, 1998.

### A. Timeliness of the original district court complaint

A Title VII plaintiff must file her complaint within ninety days after receiving a final agency determination. See 42 U.S.C. § 2000e-16(c). Plaintiff O'Neal filed her original complaint in this court on February 27, 1997. Thus in order for her complaint to be timely, she must have received the final agency decision no earlier than November 29, 1996. The evidence showed that on November 21, 1996 Defendant sent the final agency decision, dated November 20, 1996, by certified mail to Plaintiff O'Neal's counsel and husband, Butch O'Neal, Esq., at his Albuquerque post office box. In response to the motion to dismiss which I granted, Mr. O'Neal submitted an affidavit stating that he received the final agency decision at his mailing address on December 3, 1996. Mr. O'Neal also stated, in a conclusory manner, that the final agency decision was "delivered" to his mailing address on December 3, 1996. As evidence of delivery, he swore that he "immediately" stamped the correspondence as received by him when he picked it up on that same date.

In January 1999, when I decided the motion to dismiss, the state of the law appeared different than it is today. The relevant date then was when the letter, or notice of it, arrived at Mr. O'Neal's mailing address, not the date Mr. O'Neal first laid hands on the mail. See, e.g., Million v. Frank, 47 F.3d 385, 388 (10th Cir. 1995) (finding limitation period began when wife took delivery of letter delivered to plaintiff's home address, expressly declining to follow Sousa v. N.L.R.B., 817 F.2d 10, 10-11 (2d Cir. 1987) in which period began when plaintiff picked up his mail at post office box and not when notice of the letter was placed in his box five days prior); Watts-Means v. Prince George's Family Crisis Center, 7 F.3d 40, 41-42 (4th Cir. 1993) (clock

started when Postal Service left notice at plaintiff's home that letter was available for pick up at post office, cited with approval in Million). Thus, in absence of evidence about the date of delivery to Mr. O'Neal's mailing address, I applied the presumption that notice is received three days after it is mailed, as applied by the Supreme Court in Baldwin County Welcome Center v. Brown, 466 U.S. 147, 148 n.1 (1984) and subsequent cases within the Tenth Circuit. See, e.g., Bergman v. Sprint/United Managment Co., 981 F. Supp. 1399, 1402 (D. Kan. 1997). Under this presumption, I dismissed Plaintiff O'Neal's February 27, 1997 original district court complaint as untimely.

Since the January 19, 1999 Memorandum Opinion and Order, and since the filing of Plaintiffs' Motion to Reconsider, the law in the Tenth Circuit appears to have changed. On June 24, 1999 the Tenth Circuit decided Jackson v. Continental Cargo-Denver, 183 F.3d 1186, 1187 (10th Cir. 1999). In that Title VII case, the EEOC sent notice to the plaintiff of his right to sue via certified mail. The postal service three times left "Form 3849" notices with the plaintiff indicating attempted delivery and that he could pick up the certified letter at the post office.[1] The notices did not identify the sender. Notations on the letter itself indicated that delivery was attempted on April 19, April 27, and May 4, 1995. The plaintiff, temporarily residing elsewhere, did not check his mailbox and discover the Form 3849 notices until May 4, 1995. He picked up his letter at the post office that same day. He filed his complaint in the district court on August 1, 1995, eighty-nine days after he picked up the letter on May 4, 1995 and 104 days after the first

---

[1] The court in Jackson does not describe Form 3849. I take judicial notice of the fact that it substantially resembles the notice which Ernestine Garcia, initial recipient of the letter containing the final agency decision and the proprietor of the mailing facility from which Mr. O'Neal leases a mail box, testifies she would have placed in Mr. O'Neal's mail box. See Pls' Br. in Supp. of Pls' Mot. for Recons. of the Ct's. January 19, 1999 Order, Ex. 2.

attempted delivery on April 19.

The court found his complaint to be timely. See id. at 1189. The Tenth Circuit reversed the district court and rejected its analysis, which was similar to that made earlier in this case. It distinguished Million by describing that case as one of constructive receipt because the plaintiff's wife received the notice at issue there, in contrast with the case before it where the notice remained untouched by anyone until May 4, 1995. The Tenth Circuit held, therefore, that its reliance in Million on Watts-Means (starting clock with delivery of notice that letter available for pick up) was "not dispositive." Id. So too, presumably, was Million's rejection of Sousa (starting clock when plaintiff laid hands on his mail). The Tenth Circuit commented that "it makes little sense to begin the period for bringing such an action before the plaintiff knows he has the right to do so . . . .We are not at liberty to shorten that period by a crabbed construction of the events that trigger a plaintiff's receipt of notice that he is authorized to sue." Id. at 1189.

Applying Jackson to the facts of this case, Plaintiff O'Neal's complaint was timely. Defendant presents no evidence that Plaintiff O'Neal through her attorney Mr. O'Neal physically received the final agency decision any earlier than December 3, 1997. Defendant also does not make any suggestion that Mr. O'Neal suspected the arrival of the decision and deliberately delayed retrieval of it. See id. at 1190 n. 1. Plaintiff O'Neal has successfully rebutted any presumption on the date delivery, see Witt v. Roadway Express, 136 F.3d 1424, 1429-30 (10th Cir. 1998) and her complaint is timely.

Accordingly, I do not reach Plaintiff O'Neal's argument that equitable tolling should apply.

## B. Retaliation claim in supplemental complaint based on hiring of Dr. Bingham

The final undecided portion of Plaintiffs' Motion to Reconsider concerns Plaintiff O'Neal's request to reconsider the dismissal of her "sex based discrimination claims." In the January 19, 1999 Memorandum Opinion and Order I dismissed for failure to exhaust her administrative remedies Plaintiff O'Neal's allegations of gender discrimination based on the hiring of Dr. Scott Bingham as Acting Chief of the Mental Health/Social Services Program and the consequent elimination of some of Plaintiff O'Neal's authority, as alleged in Plaintiffs' supplemental complaint. Plaintiffs' Motion to Reconsider, however, does not address these allegedly discriminatory acts stemming from Dr. Bingham's hiring. Instead, Plaintiff O'Neal argues that she did raise claims of gender discrimination, citing to her affidavit submitted in support of her informal 1993 EEOC complaint, which was the subject of the November 20, 1996 final agency decision, and in turn the subject of the February 27, 1997 district court complaint. All of the testimony Plaintiff cites relates to the allegations in her original complaint; none of it relates to the hiring of Dr. Bingham, which Plaintiff mentioned only in her supplemental complaint. Therefore, in the August 12, 1999 Memorandum Opinion and Order, I declined to reconsider the decision in the January 19, 1999 Memorandum Opinion and Order with respect to these allegations about the hiring of Dr. Bingham, on the grounds that it was undisputed that Plaintiff O'Neal never filed an administrative complaint regarding these charges.

However, in the August 12, 1999 Memorandum Opinion and Order I acknowledged that the allegations in the supplemental complaint concerning the alleged diminution of Plaintiff O'Neal's authority through the hiring of Dr. Bingham may have constituted a retaliation claim, rather than one for gender discrimination. If so, under the rule in <u>Jones v. Runyon</u>, 91 F.3d 1398,

1401-02 (10th Cir. 1996), an act in retaliation for the filing of an EEOC complaint is reasonably related to that complaint, eliminating the need to pursue further administrative remedies for the retaliation claim. The vitality of Plaintiff O'Neal's retaliation claim then depends on that of her underlying administrative charge, which was considered untimely but is now reinstated.

In the Pretrial Order filed May 10, 1999, at 5, Defendant recognized that at least the portion of the supplemental complaint concerning Mr. Canizales' alleged planned entry into the Headquarters West building on November 24, 1997 attempts to state a retaliation claim. In the supplemental memorandum submitted in accordance with the August 12, 1999 Memorandum Opinion and Order, Plaintiff O'Neal argued that she intended to assert in the supplemental complaint additional facts in support of the claims in the original complaint, including retaliation. Plaintiff O'Neal did not specifically identify the claims in the supplemental complaint because, in her view, she was not amending her complaint to add new causes of action, but merely adding additional facts. At the pretrial conference on December 22, 1999 Defendant agreed that the original complaint contained allegations of retaliation. I find that the allegations in the supplemental complaint concerning the hiring of Dr. Bingham also assert a retaliation claim. Because of the finding *supra* that the original complaint is timely, that portion of the supplemental complaint alleging retaliation by hiring Dr. Bingham is now reinstated.

## II.     Defendant's Motion for Summary Judgment

Defendant served on Plaintiffs a motion for summary judgment at a time when only one comparatively small part of the case remained viable, namely, alleged discrimination based on Mr. Canizales' alleged planned entry into the Headquarters West building on November 24,

6

1997.[2] Defendant served the motion on Plaintiffs under the mistaken factual belief that Mr. Canizales was indeed in the building on that date. Following the court's denial of Defendant's request to file the motion because it was too lengthy, Defendant found "new information" suggesting that Mr. Canizales was never in the Headquarters West building on November 24, 1997. Defendant then substituted the motion for summary judgment now before the court in place of the motion that previously had been served but not filed.

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). When applying this standard, the factual record and reasonable inferences therefrom are examined in the light most favorable to the party opposing summary judgment. See Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). The party moving for summary judgment bears the burden of "'showing'--that is, pointing out to the district court-- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U. S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. See Bacchus Indus. Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of the pleadings. See id.

Defendant moves for summary judgment on the alleged discrimination arising from averment seven of the supplemental complaint, which states, "IHS Management Officials

---

[2] This allegation is in the supplemental complaint, which, as noted previously, does not indicate specifically which cause or causes of action arise from the factual allegations in it. The parties briefed the motion under the apparent assumption that the charge concerning the planned entry on November 24, 1997 is one of gender discrimination, hostile work environment, and/or retaliation.

7

reassigned Frank Canizales to work in the building where Plaintiffs work on November 24, 1997."
This allegation is rather ambiguous, but under either reasonable reading, Defendant has met the burden of showing an absence of evidence to support Plaintiff O'Neal's case. Under one view, Plaintiffs attempt to claim that unlawful discrimination resulted when Mr. Canizales entered the building on November 24, 1997 to work. However, Defendant presented evidence, the most persuasive of which was from Mr. Canizales himself, in which he swore he was never in the Headquarters West building on November 24, 1997. With the burden of production shifted to them, Plaintiffs attempted to rely on an affidavit by Dr. Bingham, subsequently withdrawn, that Mr. Canizales did enter the building on the day in question. Because the assertions in that affidavit were in error as admitted by the affiant, it does not serve to create a material issue of fact. To the extent that the supplemental complaint is based on Mr. Canizales' alleged actual entry into the Headquarters West building on November 24, 1997, summary judgment is appropriately granted.

The alternative reasonable view of ambiguous averment seven in the supplemental complaint is that the mere proposal by IHS management to allow Mr. Canizales to work on November 24, 1997 at Headquarters West constitutes some form of discrimination. As to this assertion, there appears to be no question of fact. Defendant does not dispute that a plan existed for allowing Mr. Canizales to enter the Headquarters West building on November 24, 1997. Defendant does dispute that the plan was put forth for illegitimate reasons.

Plaintiffs' problem here is one of both fact and law. In the Memorandum Opinion and Order filed August 12, 1999, I ordered Plaintiffs to submit supplemental authority in support of their position. Plaintiffs stated that

8

> EEOC regulations recognize that complaints that allege discrimination, "in any preliminary steps that do not, without further action, affect the person: for example, progress reviews or improvement periods that are not part of any official file on the employee", **should not be dismissed**.

Pls' Supplemental Mem. of Law at 2 (emphasis in original). Plaintiffs lifted the language in quotations from 57 Fed. Reg. 12,634 (1992) but mischaracterized it by adding that the complaints described should *not* be dismissed. The text from which they extracted the above-quoted language, which is not a "regulation," as Plaintiffs stated, but a passage from the Federal Register, actually says:

> We intend the section to require dismissal of complaints that allege discrimination in any preliminary steps that do not, without further action, affect the person; for example, progress reviews or improvement periods that are not a part of any official file on the employee. If the individual alleges, however, that the preliminary step was taken for the purpose of harassing the individual for a prohibited reason, the complaint cannot be dismissed under this section because it has already affected the employee. One agency suggested that mootness be explicitly added to the regulation. We have adopted that suggestion and included the explicit provision in this subsection.

57 Fed. Reg. 12,634. The regulation enacted according to this passage from the Federal Register reads as follows: "Prior to a request for a hearing in a case, the agency shall dismiss an entire complaint . . . [t]hat is moot or alleges that a proposal to take a personnel action, or other preliminary step to taking a personnel action, is discriminatory." 29 C.F.R. § 1614.107(a)(5). Thus, both the Federal Register and the Code of Federal Regulations indicate that proposed personnel actions *should* be dismissed. The Code of Federal Regulations makes no exceptions.

Plaintiffs argue that proposed actions may form the basis of a Title VII case where the action either is proposed for the purpose of unlawfully discriminating against the plaintiff or the proposed action affects the plaintiff. Plaintiffs base this argument on their inaccurate characterization of the language of 57 Fed. Reg. 12,634 and a decision from the EEOC,

9

Rodriguez-Soto v. Caldera, Req. No. 05960646 (EEOC Oct. 8, 1998). In Rodriguez-Soto, the plaintiff won reconsideration of the dismissal of his discrimination claim which was based on his employer's denial of assistance to the plaintiff in a performance improvement program into which his employer had placed him. The EEOC found that because the plaintiff alleged that the employer's actions were taken for the purpose of harassment and that he had already been affected, his claim survived. The opinion provides no insight into the merit of his allegations of intent or how the employer's decision affected him.

The first rule Plaintiffs offer, that an act which has yet to occur becomes discriminatory when taken with the intent to discriminate, is not reflected in any federal court cases brought to the court's attention. Those cases discussing proposed actions do not delve into the question of intent, and instead appear to rely on 29 C.F.R. § 1614.107(e) to dismiss claims based on proposed actions. See Ritter v. Dalton, No. 96-2063, 1997 WL 697181, **2 (4th Cir. Nov. 7, 1997) (proposed reorganization preventing promotion not actionable, citing to predecessor to current section 1614.107(a)(5)); Colantuoni v. Macomber, 807 F. Supp. 835, 838-39 (D.D.C 1992) (proposed lowering of job grade not actionable under still earlier precursor to section 1614.107(a)(5)).

Assuming, *arguendo*, that a malicious proposal is actionable, Plaintiffs have not pointed to any admissible evidence of Defendant's intent to violate Plaintiffs' rights by proposing to station Mr. Canizales on November 24, 1997 in the building where Plaintiffs worked.[3] There is testimony in the record from Plaintiff O'Neal in which she states her belief that Mr. Duane Jeanotte made

---

[3] The record is unclear as to whether Mr. Canizales' planned presence on November 24, 1997 was merely to allow him to take part in a short training class or if it signified the commencement of a more permanent transfer.

10

the decision to transfer Mr. Canizales back to Headquarters West "[t]o teach us women a lesson for raising these issues in the court system, as well as in the EEO system, that you are not to question the decisions of the agency, most of which are male managers."  Tr. of Hr'g December 15, 1997 at 79, Reply to Pls' Resp. in Opp'n to Def's Mot. for Summ. J., Ex. 4.  Plaintiff O'Neal points to no evidence in support of her assertion.  Instead, the record reflects that the decision to reassign Mr. Canizales, taken before the entry of the temporary restraining order or preliminary injunction, was made for business purposes.  <u>See</u> Mem. from Duane Jeanotte dated October 31, 1997, Reply to Pls' Resp. in Opp'n to Def's Mot. for Summ. J., Exhibit 1 (stating purpose was to enable Mr. Canizales to better perform his work by being in close proximity to other ASAPB employees); Test. of Wayne Jeanotte, Tr. of Hr'g December 12, 1997 at 24, Reply to Pls' Resp. in Opp'n to Def's Mot. for Summ. J., Ex. 3 (same); e-mail message from Dr. Bingham dated October 11, 1996, 9:59 a.m., Reply to Pls' Resp. in Opp'n to Def's Mot. for Summ. J., Ex. 2 (indicating purpose was to enable Mr. Canizales to attend a legitimate business function). Moreover, the decision was made with awareness of Plaintiffs' concerns and included measures designed to allay those concerns.  <u>See</u> e-mail message from Dr. Bingham dated October 11, 1996, 9:59 a.m., Reply to Pls' Resp. in Opp'n to Def's Mot. for Summ. J., Ex. 2  (explaining to Plaintiff O'Neal that Mr. Canizales would be on a different floor, with a security escort in his company at all times while on the premises); Test. of Wayne Jeanotte, Tr. of Hr'g December 12, 1997 at 24, Reply to Pls' Resp. in Opp'n to Def's Mot. for Summ. J., Exhibit 3 (stating that Mr. Canizales would be separated from mental health staff by at least one floor).  Plaintiffs have not shown a genuine issue of material fact with admissible evidence.

Plaintiffs also contend that an otherwise proper personnel action becomes actionable

when, without more, it negatively impacts a plaintiff. Their position is incorrect. Plaintiffs claim that they felt compelled to abandon their workplace on November 24, 1997 because Mr. Canizales' anticipated presence altered the terms, conditions, and privileges of their employment. As the Tenth Circuit has stated bluntly, "Not everything that makes an employee unhappy is an actionable adverse action." Trimmer v. United States Dep't of Labor, 174 F.3d 1098, 1103 (10th Cir. 1999) (quotations omitted).

Adverse employment actions are those that work "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Sanchez v. Denver Pub. Schs., 164 F3d 527, 531 (quotations omitted). They are not mere inconveniences. See id.; Gillum v. Federal Home Loan Bank, 970 F. Supp. 843, 853 (D. Kan. 1997). The decision to allow Mr. Canizales into the Headquarters West building on November 24, 1997 to perform his work, with measures to keep Mr. Canizales from altering the conditions of Plaintiffs' employment, falls neatly into the category of an employer's decisions which are not actionable under Title VII. The result is not changed merely because Plaintiffs then took it upon themselves to absent themselves from work. Neither is the result changed because on November 25, 1997, under a different legal standard, Plaintiffs successfully obtained a temporary restraining order and still later a preliminary injunction, keeping Mr. Canizales from Plaintiffs' workplace.

IT IS THEREFORE ORDERED that

(1) the remainder of Plaintiffs' Motion to Reconsider Judge Parker's Order Dated January 19, 1999 [Doc. No. 121] is GRANTED, reinstating the claims raised in the November 20, 1996 final agency decision concerning Plaintiff O'Neal and recognizing the existence of Plaintiff

O'Neal's retaliation claim in the supplemental complaint based on the hiring of Dr. Bingham, and

    (2) Defendant's Motion for Summary Judgment [Doc. No. 141] is GRANTED, and the claims of all Plaintiffs stemming from Mr. Canizales' alleged planned entry on November 24, 1997 into the Headquarters West building will be dismissed.

_____
**UNITED STATES DISTRICT JUDGE**