IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARY ANN O'NEAL and BEVERLY STEWART,

       **Plaintiffs,**

vs.                                                                                                                    Civ. No. 97-261 JP/DJS

**TOMMY THOMPSON, SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

On July 9, 2001, Plaintiffs filed a motion (Doc. No. 258) requesting attorney's fees and costs because they were prevailing parties in this civil rights case. Plaintiffs' counsels have submitted billing statements detailing the time they spent prosecuting the case. Defendant argues that attorney's fees are inappropriate given the limited relief awarded to Plaintiffs. (Doc. No. 267). Resolution of Plaintiff's motion requires an understanding of the case's history.

Plaintiffs filed a four count complaint against the Secretary of the Department of Health and Human Services alleging (1) unlawful discrimination based on sex in violation of Title VII, (2) the creation of a hostile work environment in violation of Title VII, (3) unlawful retaliation for engaging in protected conduct under Title VII, and (4) unlawful retaliation in violation of the whistle-blower act. The complaint sought four forms of relief: (A) a permanent injunction keeping Defendant from continuing to violate Plaintiffs' civil rights; (B) "[c]ompensatory damages in the amount awarded by the jury, not to exceed $300,000 for each Plaintiff"; (C) an Oder

awarding "Plaintiffs' front pay, fringe benefits, and other compensation"; and (D) an award for "the costs of this action, including reasonable attorney's fees, and other legal and equitable relief as this Court deems just and proper." Pls.' Compl. at 15, Doc. No. 1.

Early in the litigation on December 17, 1998, Plaintiffs succeeded in persuading the Court to grant a preliminary injunction against Defendant. Doc. No. 35. The injunction "enjoined and restrained" Defendant "from placing Frank Canizales at a work station inside the building in which the plaintiffs work until further order of this Court." Id. at 2. Thereafter, Plaintiffs stipulated to withdraw count four of the complaint for retaliation based on the whistle-blower act. Doc. No. 91. Defendant then succeeded in having all claims of one of the three Plaintiffs, Beverly Wilkins, dismissed. Doc. Nos. 213 & 214. Defendant also succeeded in having counts one and two dismissed, both of which addressed Title VII discrimination at the Department of Health. Doc. Nos. 213 at 45 & 214. A jury trial was held for the two remaining Plaintiffs on count three of their complaint, which addressed Title VII retaliation claims. The jury awarded each Plaintiff $3,500 in compensatory damages for Defendant allowing Frank Canizales to enter their workplace on one occasion, an act the jury considered retaliatory. Doc. No. 248.

*Are Attorney's Fees Appropriate in this Case?*

A district court within the Tenth Circuit must look to two controlling principles when determining whether to grant attorney's fees in a civil rights case. The first is "the general rule that attorney's fees are awarded to prevailing parties absent special circumstances which would make such an award unjust." *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1229 (10th Cir. 2001). The second is Justice O'Connor's "three-part analysis" articulated in *Farrar v. Hobby*, which the court applies to arrive at a reasonable fee. 506 U.S. 103, 116-22 (1992) (O'Connor J.,

concurring). When applying the two principles, the Tenth Circuit has cautioned that "the former should not be unduly emphasized to the detriment of the latter." *Barber*, 254 F.3d at1229.

In the Tenth Circuit, a district court analyzes unjust awards and the reasonable amounts of awards separately. *See Gudenkauf v. Stauffer Communications, Inc.*, 158 F.3d 1074,1081-82 (10th Cir. 1998). First the court must assess "whether any special circumstances would make any award unjust. . . . Upon determining that the award of a fee is proper . . ., the court must then fix a reasonable fee." *Barber*, 254 F.3d at 1230 (citing *Gudenkaf*, 158 F.3d at 1081-82). Therefore, whether a fee award is appropriate involves three steps, which a court should address in order: first, is plaintiff a prevailing party; second, would an award of attorney's fees would be unjust; and third, if an award is appropriate, what constitutes a reasonable fee.

A. *Plaintiffs are prevailing parties.*

To be eligible for attorney's fees under 42 U.S.C. § 1988, a plaintiff must be a "prevailing party." The U.S. Supreme Court defines a prevailing party as a plaintiff who can "point to a resolution of the dispute which changes the legal relationship" between the plaintiff and the defendant. *Farrar*, 506 U.S. at 111. The legal relationship between plaintiff and defendant is altered when the litigation bestows on the plaintiff the right to "enforce a judgment, consent decree, or settlement against the defendant." 506 U.S. at 113. The "degree of plaintiff's success" does not bear on plaintiff's status as a prevailing party. 506 U.S. at 113-14. "[D]amages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit for forcing the defendant to pay an amount of money he otherwise would not pay." 506 U.S. at 113. Thus, Defendant is incorrect as a matter of law when he argues that "Plaintiffs cannot be considered to be prevailing parties in this matter because of the extremely limited award

of the jury." Def.'s Resp. to Pls.' Mot. for Att'y Fees and Costs at 2. To the contrary, the injunctive relief awarded by the Court and the monetary judgment awarded by the jury qualify Plaintiffs as prevailing parties.

  B. *An award of attorney's fees is not unjust.*

"Defendant respectfully suggests to the Court that to award any attorney's fees in this instance would be unjust." Def.'s Resp. at 3. Defendant cites no law supporting his claim that an award would be unjust; Defendant simply asserts that because Plaintiffs prevailed only on "one limited claim of retaliation," an award would be unjust. Yet, the degree of Plaintiffs' success goes to the O'Connor factors for reasonableness of the award, and is not, by itself, a special circumstance that makes an award unjust. *Cf. Gudenkauf,* 158 F.3d at 1082 (holding that the nature of victory in a mixed motive case "is not a special circumstance that would make an award of fees unjust"). Further, this is not a case where the jury awarded nominal damages of $1 to each Plaintiff; the jury awarded the two Plaintiffs who went to trial $3,500 each, a small, but tidy sum.

Defendant's assertion that the relief afforded Plaintiffs is not worthy of fees is also at odds with the Tenth Circuit's case law. According to the Tenth Circuit:

> Although the power to award such fees is discretionary, that discretion is narrow once a civil rights plaintiff demonstrates that he is a 'prevailing party.' The implication of our cases is that when a plaintiff prevails in a civil rights suit, the plaintiff ordinarily should not have his vindication of these rights eviscerated by an obligation to pay his attorney's reasonable fees.

*Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998).

  C. *The Reasonableness of Attorney's Fees.*

"Although the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under §

1988." *Farrar*, 506 U.S. at 114 (addressing a $1 damage award). Thus, once a plaintiff has established that she is a prevailing party, and defendant fails to prove that an award is unjust, the analysis then shifts to an inquiry concerning the "the degree of plaintiff's overall success." *Id*. As the Supreme Court held in *Farrar*, "the degree of the plaintiff's overall success goes to the reasonableness of a fee award under *Hensley v. Eckerhart*, 461 U.S. 424 (1983)." *Id*. "As to what constitutes a reasonable fee, [a court in the Tenth Circuit] looks . . . to the O'Connor factors. *Barber*, 254 F.3d at 1230. The three O'Connor factors are addressed below.

        1.     *The extent of relief on which Plaintiffs prevailed.*

The first of the O'Connor factors is the difference between the relief Plaintiff sought and the relief recovered. *Farrar*, 506 U.S. at 121-22 (O'Connor, J., concurring). Plaintiffs here sought relief in the form of (A) a permanent injunction preventing Defendant from continuing to violate Plaintiffs' civil rights, (B) "[c]ompensatory damages in the amount awarded by the jury, not to exceed $300,000 for each Plaintiff," (C) an "Order awarding Plaintiffs' front pay, fringe benefits, and other compensation," and (D) an award for "the costs of this action, including reasonable attorney's fees, and other legal and equitable relief as this Court deems just and proper." Pls.' Complaint at 15 (Doc. No. 1). Of the three forms of relief that have already been determined, Plaintiffs prevailed in securing two of the three requested types of relief. Plaintiffs received an injunction that kept Frank Canizales out of their workplace, and compensatory damages of $3,500 apiece because Defendant allowed Mr. Canizales back into their workplace once in an act of intentional retaliation. Plaintiffs failed to get front pay or other compensation because their sex discrimination claims failed. The last form of relief requested—attorney's fees and costs—the Court is now deciding.

5

Defendant attempts to characterize the relief granted Plaintiffs as nominal because they only received $3,500 out of a requested $300,000, and failed to receive front pay or other benefits. Def.'s Resp. at 4. Defendant ignores the injunctive relief Plaintiffs secured. Even classifying Plaintiffs' claims for sex discrimination, which were dismissed on summary judgment, as their primary claims, precedent supports Plaintiffs on this point as they secured a modest monetary judgment and injunctive relief. *See Phelps v. Hamilton*, 120 F.3d 1126, 1132 (10th Cir. 1997) (holding that although Plaintiffs lost on three out of four of their underlying claims, including their primary claim of bad faith prosecution, the declaratory relief plaintiffs obtained, overturning a picketing act as unconstitutionally vague, was not "merely technical or de minimis").

Plaintiffs also dispute Defendant's assertion that they requested $300,000 in compensatory damages. The complaint sought "[c]ompensatory damages in the amount awarded by the jury, not to exceed $300,000 for each Plaintiff." Pls.' Compl. at 15. Plaintiffs contend the $300,000 figure was placed in the complaint merely as recognition that Title VII caps damages at that amount. Pls.' Reply at 2. Plaintiffs' position is that they did not request $300,000, they simply requested compensatory relief in whatever amount the jury determined. *Id*. Given the way the request is worded, Plaintiffs contention that the monetary request was open ended, and not for a fixed sum, has merit.

The extent of relief factor favors Plaintiffs. Plaintiffs received $3,500 apiece, not a nominal damage award of $1. *See Barber*, 254 F.3d at (reversing an award of attorney's fees following a judgment for $1 because the court failed to apply the correct legal standard, but "emphasizing that our remand should not be taken as either an endorsement or a condemnation of

6

the original fee award"); *Brandau*, 168 F.3d at 1183 (affirming district court's award of $41,598 in fees and expenses when jury awarded plaintiff $1); *Robinson*, 160 F.3d at 1279-80 (reversing the reduction of a fee award from the requested $186,009 to $105,362 when plaintiff was awarded declaratory relief and $1 against each defendant). Further, like the plaintiffs in *Phelps*, although Plaintiffs did not succeed in securing everything they wanted, they did prevail on the biggest problem they confronted—having the abusive Frank Canizales removed from their workplace.

The fact that plaintiffs failed to secure relief for one of three of their members should not reduce the fee award. Under Tenth Circuit law, when cases involve a common core of facts—here the problems caused by Frank Canizales' presence in Plaintiffs' workplace—Plaintiffs "should be given breathing room to raise alternative legal grounds without fear that merely raising an alternative theory will threaten the attorney's subsequent compensation. Instead, a court should focus on the 'significance of the overall relief' that the prevailing party has won. 'The result is what matters.'" *Robinson*, 160 F.3d at 1283 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). Here, Plaintiffs prevailed in removing Frank Canizales from the building and demonstrating purposeful retaliation when Defendant allowed him back in. *See Brandau*, 168 F.3d at 1182 (finding the relief awarded "vindicated the violation of [Plaintiff's] civil rights").

    2.    *The Extent to Which Plaintiffs Succeeded on Their Theory of Liability*.

Defendant contends that "Plaintiffs prevailed on only one limited issue—the presence of Frank Canizales in the workplace on one day out of many in Albuquerque, New Mexico." Def.'s Resp. at 5. Plaintiffs reply that because of their successful retaliation claim, they should be

awarded full attorney's fees because their claims, including the ones that failed, involved a common core of facts.

The Tenth Circuit has refused to reduce attorney's fees when the issues disputed in the case involve common facts. In *Robinson*, the Tenth Circuit "rejected a Title VII defendant's appeal calling for a reduction in a fee award granted to the plaintiff because [the Court] found that the plaintiff's unsuccessful state-law contract and emotional distress claims were all 'intimately related' to her successful Title VII hostile work environment claim." 160 F.3d at 1283 (citing *Smith v. Norwest Fin. Acceptance, Inc.*, 129 F.3d 1408 (10th Cir. 1997)). An objective reading of Plaintiffs' complaint discloses that the focal point of their problems was Frank Canizales' abusive conduct and his threatened violence against them. Understood in this fashion, the award of the injunction to Plaintiffs keeping Canizales out of their building was a big victory.

But recognizing that Plaintiffs' claims of retaliation and discrimination arose from a common core of facts does not mean that attorney's fees are *ipso facto* justified as to each claim in its entirety. The Court retains a significant amount of discretion "in determining what constitutes a reasonable award in light of the plaintiffs' relative success in the underlying proceedings." *Phelps*, 120 F.3d at 1133. The record demonstrates that Plaintiffs' pursuit of their Title VII discrimination claims was halfhearted. Doc. No. 213 at 40 (noting Plaintiffs' repeated failure to "make responsive legal arguments" to support the discrimination claims). Given IHS's good faith effort to remedy the discriminatory atmosphere once it was brought to their attention, *see* Doc. No. 213 at 40-43, Plaintiffs success in pursuing their discrimination claims was limited both by the facts and their poor litigation strategy.

8

Awarding fees for the discrimination claims here would encourage the unwarranted inflation of fee statements for parties who choose to expend valuable time and energy pursuing baseless or negligible claims. Title VII's goal of voluntary compliance would not be well served by penalizing a party that succeeded in its good faith effort to respond to workplace harassment. One must keep in mind Title VII was created to "promote conciliation rather than litigation." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 764 (1998) (observing that "Title VII is designed to encourage the creation of anti-harassment policies and effective grievance mechanisms"). Additionally, the purpose of awarding attorney's fees under § 1988 is "not to give private lawyers an unwarranted windfall, but rather to ensure compensation 'adequate to attract competent counsel.'" *Robinson*, 160 F. 3d at 1281 (citing S. Rep. No. 94-1011, at 6 (1976)). Because Plaintiffs' limited success was self-inflicted, the Court will reduce Plaintiffs' fee award accordingly.

### 3. *The Public Purpose Served by the Case*.

The Tenth Circuit views the public purpose served by a civil rights plaintiff in generous terms, "concluding that a public goal is accomplished if the plaintiff's victory encourages attorneys to represent civil rights litigants, affirms an important right, and/or provokes a change in the defendant's conduct." *Barber*, 254 F.3d at 1232. Plaintiffs assert that by prevailing before the jury they have vindicated the right to be free from retaliation when reporting Title VII harassment. Pls.' Reply at 6. Plaintiffs point out that fear of retaliation within the Indian Health Service Division (IHS) of the Department of Health is a real problem, as a report in the year 2000 disclosed that 62 % of employees, including supervisors, felt as though they would suffer reprisal from their superiors for making EEOC complaints. Pls.' Reply Ex. A at unnum. p. 3 (reporting

9

that the figure was "considerably higher" than that reported in 1998). By prevailing on their retaliation claim, Plaintiffs claim to have reassured IHS employees of their rights.

Defendants argue that Plaintiffs have not demonstrated "any significant deprivation of an established interest." This position overlooks the fact that legislative and executive branches of government signed off on Title VII legislation "prohibiting reprisal and retaliation for employees participating in the EEO process." Pls.' Reply at 6. As the Tenth Circuit held in *Barber*, "what is controlling is Plaintiff's vindication of her civil rights and of important rights of her co-workers." 254 F.3d at 1232-33. By vindicating the right for any IHS employees to report harassment free from retaliation, the results Plaintiffs achieved "are in the interests of the public and are exactly what Congress intended to encourage under Title VII." *Brandau*, 168 F.3d at 1183.

D. *Over-Billing.*

Although Plaintiffs should be awarded reasonable attorney's fees, matters other than the O'Connor factors must be considered when determining an appropriate fee award. After carefully scrutinizing the billing statements prepared by Plaintiffs' two attorneys, it became clear that one of Plaintiffs' attorneys, Mr. O'Neal, consistently overstated hours devoted to the case. Without detailing every instance of excessive billing , *see Gudenkauf*, 158 F.3d at 1082, the Court provides the following sample illustrations.

Mr. O'Neal lists 3.5 hours for attending a TRO hearing on November 25, 1997. Mem. in Supp. of Pls.' Mot. for Atty's Fees, Attach. 1 at 2. Yet, the Court spent only 34 minutes on the hearing. Doc. No. 24. Mr. O'Neal states that he spent 4 hours at an injunction hearing on December 18, 1997. Mem. in Supp. of Pls.' Mot. for Atty's Fees, Attach. 1 at 2. But the Court did not hold an injunction hearing or any other kind of hearing for this case on that day. In fact

the Court issued the injunction the day before, December 17, 1997, *see* Doc. No. 35, a day for which Mr. O'Neal claims to have spent 6.2 hours attending the injunction hearing (which lasted only 2 hours and 29 minutes) and meeting with clients. Discrepancies of this sort exist throughout Mr. O'Neal's fee statement, and represent hours "simply not attributable to the prosecution of the plaintiff[s']" claims. *Gudenkauf*, 158 F.3d at 1082. Given the unreasonable number of hours Mr. O'Neal claims to have spent on this case, the Court must reduce the hours asserted to a reasonable number of hours.

E.  *Unnecessary Duplication of Effort*

The billing statements provided by Plaintiffs' attorneys also reflect unnecessary duplication of effort in drafting and editing the pleadings. The motion for attorney's fees and costs states that Mr. Gurd "developed the drafts of motions, memoranda and briefs," and that Mr. O'Neal retained "final responsibility over the briefs and other legal writings." Pls.' Mot. for Atty's Fees and Costs at 2. The time Mr. O'Neal contends to have spent editing Mr. Gurd's legal writing consistently, and in some cases overwhelmingly, exceeds the time it actually took Mr. Gurd to draft the document. For example, on November 21, 1997, Mr. Gurd drafted Plaintiffs' motion to restrain Mr. Canizales from entering Plaintiffs' workplace, and the memorandum in support. Drafting the documents took Mr. Gurd 0.8 hours. Pls.' Mot. for Atty's Fees and Costs, Time Records for Mr. Gurd, Esq. at 1. However, Mr. O'Neal asserts that he spent 3.5 hours editing and conferring with Mr. Gurd on the briefs. Pls.' Mot. for Atty's Fees and Costs, Attorney Fee Statement of Butch O'Neal at 2. Likewise Mr. O'Neal billed 4.5 hours to edit Plaintiffs' Reply brief in support of a motion for reconsideration, a document that took Mr. Gurd 0.2 hours to draft. If the duplication of time by Mr. O'Neal was isolated, Mr. O'Neal's time entries could perhaps be explained by his

11

dissatisfaction with Mr. Gurd's work, resulting in the complete re-writing of a brief. But given the consistent duplication of time spent drafting the same documents, much of the time spent by Mr. O'Neal editing Mr. Gurd's work can be characterized only as unnecessary.

*The Reasonable Fee Award.*

Defendant does not dispute the reasonableness of the rates charged by Mr. O'Neal or Mr. Gurd. Def.'s Resp. to Pls.' Mot. for Atty's Fees at 7 n.1. Although two of the three O'Connor factors favor the Plaintiffs, that is not dispositive of the issue because no one factor determines the reasonableness of a fee award. *Barber*, 254 F.3d at 1233. The Court finds that the second O'Connor factor controls the reasonableness of the fee here because of Plaintiffs' halfhearted and unreasonable pursuit of their unsuccessful discrimination claims. Thus, the Court will reduce the fee statements of Mr. O'Neal and Mr. Gurd to those hours reasonably spent prosecuting Plaintiffs' request for injunctive relief and Plaintiffs' retaliation claims. To account for Mr. O'Neal's over-billing and unnecessary duplication of effort, the number of hours that Mr. O'Neal claims to have spent prosecuting Plaintiffs' retaliation claims will be further reduced. Accordingly, the Court calculates the reasonable number of hours to be awarded each attorney, and thus the reasonable fee award as follows:

|   | hourly rate | | # hours | | fee award |
|---|---|---|---|---|---|
| Mr. O'Neal — | $150/hr | X | 201 | = | $30,150 |
| Mr. Guard — | $100/hr | X | 65 | = | $6,500 |

*Costs*

Mr. O'Neal also submitted a list of costs incurred by his office attributable to the case, which total $2,806.73. Defendants argue that Plaintiffs are "not entitled to the costs they have

12

requested other than the filing fee of $150 and Dr. Biernoff's deposition costs." Defs.' Resp. at 10. Plaintiffs argue in rebuttal that "the other depositions cited by Plaintiffs as costs were used extensively by Plaintiffs in defense of the numerous dispositive motions filed by Defendant." Pls.' Reply at 7.

Plaintiff does not cite to a specific portion of any brief in which the depositions were used in defense of summary judgment motions. Although the Court is not required to, the Court looked through the record to determine what depositions were used by the Plaintiff and when. The Court found one instance of a deposition listed by Mr. O'Neal as a cost list that was used in defense of a summary judgment motion. Doc. No. 180, Pls.' Resp. in Opp'n to Defs.' Mot. for Partial Summ. J., Ex. 9. However, that deposition was used to defend, unsuccessfully, Plaintiffs' hostile work environment claim. Just as award attorney's fees were not awarded for Plaintiffs' unsuccessful discrimination claims, the Court will not award costs to Plaintiffs for unsuccessfully defending their hostile work environment claims.

As for the other depositions listed by Mr. O'Neal, there is no evidence in the record that they were used at all. Further, Plaintiffs misunderstand the standard for awarding costs. The fact that the Plaintiffs used them in preparation for hearing or trial is irrelevant. Under D.N.M.LR-Civ. 54.2(b)(2)(A)&(B), the cost of a deposition is taxable when the deposition was admitted into evidence or was used by the Court to rule on a summary judgment motion. Neither event occurred here. Although the Court could award costs under D.N.M.LR-Civ. 54.2(b)(2)(C), the Court declines to do so. Thus, the award for the costs of depositions will be limited to the cost of Dr. Biernoff's deposition. The remaining costs, other that Plaintiffs filing fee, incurred by Mr.

O'Neal will be denied as well. Therefore, the total taxable costs awarded to Plaintiffs are $319.56.

IT IS THEREFORE ORDERED that Plaintiffs' motion for attorneys' fees and costs (Doc. No. 258) is GRANTED to the extent that the Plaintiffs are awarded attorney fees in the amount of $36,650, and costs in the amount of $319.56.

_____
CHIEF UNITED STATES DISTRICT JUDGE